May it please the Court, my name is Thomas Anderson. I'm here on behalf of my client, Jose Llanas-Trejo, and I'd like to start by focusing this case on two main points. We are focused on the question of good moral character and hardship, and that's actually going in reverse from what I discussed in my brief, but we're going to touch on good moral character first because I think it's—I think the government's going to talk about it first. And I think that the issue that they're going to bring up in relation to the Castillo-Perez case that came out in 2019. So to set the stage here, we have my client, Mr. Llanas-Trejo, who's requesting cancellation of removal. He must demonstrate a variety of factors, good moral character being the primary one that's being discussed, as well as the exceptional and extremely unusual hardship to his kids. At the trial court level, the immigration judge agreed that there was no issue of good moral character. At the trial court level, the trial court attorney did not dispute—did not request that there be a negative determination about good moral character. At the trial court level, the judge, in issuing her decision, denied solely on the grounds of lacking exceptional and extremely unusual hardship. That case got appealed. It got to the Board of Immigration Appeals. The Board of Immigration Appeals denied the case on the hardship standard, did not bring up anything relating to the Castillo-Perez case, didn't address the Castillo-Perez case in relation to the DUI convictions, did not suggest that there was this presumptive question of good moral character being demonstrated, and denied. That denial occurred in December of 2020, and the same month that Mr. Llanas-Trejo's wife and daughter, eldest child, were involved in a car accident. You know, I agree with your argument because you're essentially saying there ought to be some law of the case doctrine that applies here. In ordinary appeals out of ordinary district courts, we would say, you know, you made a final decision. You had an opportunity to appeal. You had a chance to enter a decision. You didn't enter the decision. It goes back. Now all of a sudden, it's here on a whole different set of issues, and now you want to revive something that you'd already walked away from. We would say, yeah, the law of the case doctrine would get rid of that if this was a district court case, but there seems to be some sort of odd, ever-floating law of the case doctrine that exists in the cases in front of the board, and to what extent can we kind of distinguish those cases so that we actually can get to where I think you want us to get to, say they had two bites at this apple. They never bid on it. It's not right, just, or fair that they're raising it now. So what's the legal authority for us to get there? I think we've got two easy paths to that. I think the first path is, first of all, I mean, we can start with just the facts. Your Honor, I understand you asked about legal authority, and I think the legal authority is simple in that the court can look and say a chance to argue if they didn't. It's a moot point at this juncture, but if we just talk about the facts, the Board of Immigration feels in not addressing it in the first go-around and in the second go-around by, in the denial of the motion to reopen, by not specifically overruling the trial court judge, by not specifically stating that there was a lack of good moral character, I mean, their terminology that the board used was very, very short. It seemed to me like this was the shortest, easiest way to deal with the case. I mean, how do we give a couple page, or excuse me, a couple paragraph opinion and get rid of this case and move on to the next one? And so I think the judge at the board just took the easy path out without having taken a close look at the prior cases. So from the facts, they didn't appropriately or thoroughly deny it by saying, you know, there was a lack of good moral character, and whether or not he had in his prior testimony and prior evidence had rebutted that, because that never came up in the past. I think the second— I don't think you have a lot of due process rights on a motion to reopen, but is there an argument that if you're going to completely reverse the prior decision that was made by the ALJ and then the board, in this case, of finding a good moral character, and you're going to use that as a basis now to deny the motion to reopen, that there has to be some notice that that issue is on the table? I think fairness dictates that there should be at least some notice that the issue is on the table because it was not brought up before, and they had the chance to do so. I think that the board, in denying the case previously, not making a determination regarding Castillo-Perez in the earlier decision, to come back around on the second chance and say, wait a minute, you lack good moral character, there's no notice. There's no opportunity to ask for additional briefing. The board could have dealt with that very easily by responding and saying Castillo-Perez should be addressed in this case because we believe the review of this matter has changed. They didn't do that. The board just took, I would say, the easy way out, which I think is clear error. I'd also note that the board, in making that determination on the motion to reopen, was very, very short. I wrote my brief thinking about or imagining it as a denial based on Castillo-Perez, but as I read it over and over, I think the board could have been significantly more clear if they, in fact, were denying specifically for Castillo-Perez, rather than just questioning about whether a presumption had been rebutted or not. Going on to the question, my next question is on hardship. So when we get to the motion to reopen, and think about the timing here. So we've got a decision from the Board of Immigration Appeals in December, a car accident in December, an emergency room visit the day of the car accident, a significant medical treatment that turns into an MRI. We've got my client's wife getting consistent medical treatment, his daughter as well, and we have a short fuse to file a motion to reopen. Are we supposed to wait six months and get conclusive medical information, or are we supposed to file that motion to reopen as soon as we can? With a voluntary departure order that the judge at the Board of Immigration Appeals reinstated, which, by the way, requires a showing of good moral character. So the voluntary departure order that got reinstated at the December decision didn't question good moral character in its issue in re-granting or re-approving voluntary departure. So we have a short time period for voluntary departure, 60 days, 60 days to leave the United States. Next. And the basis of his case in filing the motion to reopen on the significantly different facts, on the hardship to the family members, and I think the Board, in their denial of the motion to reopen, they looked at it, again, very quickly and said, well, the hardship talks about Tomasa Muñiz, the spouse of my client. The hardship talks about the spouse being injured, and they focused on the fact that the spouse is not the qualifying relative. And I would agree with that. The spouse is not the qualifying relative, but that misses a significant point of the question of hardship, which is who takes care of the kids? We've got three kids, three uses and children. The oldest child has medical issues as a result of the accident. The middle child is dealing with issues with anxiety and depression. And those three kids are going to be cared for by now a parent who can't work, a parent who's been significantly injured. And this is all done, this is a 60-day window. We're in a short time frame of this significant change. We present that information to the Board, and the Board comes back with a determination saying, well, mom's one is injured, and there's this unaddressed, rebuttable presumption of lack of good moral character. Again, I think that was a quick decision. I think this is a couple hours maybe of someone reading it and saying, let's just deny this without closely looking at the real question of how hardship works. And hardship, in the testimony at the hearing, my client testified that if he were required to leave the United States, he'd leave alone. His wife and the children would stay here. The kids have known the U.S. is their only home. They were born here. Today, as we sit, the kids are 20, 12, and 9 years old. The plan of the families, the children would stay. So he'd be leaving. So the question then is, who cares for the kids? And would the mother, Ms. Moniz, after a significant accident, would she be in a good circumstance to be able to care for three kids without her spouse when she's now unable to work? There's an entire rebalancing of the facts that comes from this car accident. And that rebalancing, I think, requires that the Board remand. The rebalancing requires that the Board reopen. The rebalancing requires that someone closely look at the facts and determine what's going on here. And I think the Eighth Circuit isn't the place to have us evaluate all the facts. I think the Eighth Circuit looks at this and says, okay, this was improperly done. There should be a chance to have these facts fleshed out. And most definitely that the process of denying a case based on new case law that wasn't brought up before is, I mean, just smacks of unfairness. So I would like to reserve the remaining of my time for rebuttal. You may. Thank you. Ms. Farrow, when you're ready. Good morning, Your Honors, and may it please the Court. Cori Farrell on behalf of the Attorney General. I would like to start by talking about what the Board did and didn't do in its initial decision. So we have the immigration judge's decision. He or she assumed good moral character that Petitioner satisfied all the requirements for cancellation except for hardship. On Petitioner appealed the decision, and in the interim, the Attorney General issued a decision in matter of Castillo-Perez addressing the situation we have here where there are more, two or more DUIs during the good moral character period. And so on appeal to the by Petitioner. And DHS said we did not contest good moral character below, but there has been this new case, so we are raising it again. And Petitioner addressed Castillo-Perez in briefing to the Board. In the Board's decision, the Board only adopted and affirmed the immigration judge's hardship determination. It did not reach the other requirements for cancellation of removal, and it was not required to do so because hardship is dispositive of a cancellation claim. So then in Petitioner's motion to reopen, he focused solely on hardship. But to succeed on a motion to reopen, it's a very high burden. And Petitioner bore the burden of proving prima facie eligibility for the relief he would seek upon reopening, and that was cancellation of removal. So to do that, he had to show both hardship and good moral character. Petitioner did not mention good moral character in his motion to reopen. He didn't point to the prior good moral character evidence he submitted. He did not address Castillo-Perez. That and then — Well, I mean, but it's kind of in the is it fair, and maybe that's not the right question to ask, but when you already have had a finding of good moral character, why should you be expected to relitigate it? And, Your Honor — And the Board says, well, you didn't even try, therefore you lose. But they did try. And they established it once. I would say, Your Honor, we have no definitive good moral character finding post-Castillo-Perez. But you have the Board finding. The Board did not address it. There's nothing in the Board's underlying decision which says we agree with the good moral character finding. But they did adopt the ALJ findings. The Board's decision on page 95 of the record says, We adopt and affirm the immigration judge's decision that the Respondent did not establish that his removal would result in exceptional and extremely unusual hardship. The Board's — that's the first sentence of the third paragraph on page 95. The Board didn't say anything about good moral character. But it also — that's a factual finding that the IJ made, and they do review that for clear air. They didn't find — they didn't say they found any clear air, right? They didn't. And, you know, maybe we'd be having a different conversation if we were on direct appeal from a merits decision. But we are in the motion to reopen context. And Petitioner could have applied for a completely new form of relief, seeking reopening to apply for a new form of relief, and there would be no immigration judge findings at all, and the Board would have to look at prima facie eligibility for relief. And so in the motion to reopen context, Petitioner bore that burden. And as I said, in his motion to reopen, he didn't mention — he didn't point to any good moral character evidence. And then DHS filed an opposition to the motion to reopen, where they again raised matter of Castillo-Perez and argued that he did not establish good moral character. And after DHS filed that opposition, Petitioner submitted more evidence in support of his motion to reopen, but only pertaining to hardship. Again, he failed to submit any good moral character evidence or address good moral character, even after DHS raised it in opposition to his motion to reopen. And so the government's position is that because we are in this procedural posture where we're looking at a motion to reopen, which is highly disfavored, and Petitioner bears a heavy burden of proving that if his proceedings would be reopened, the result would change. And so here, since he was seeking reopening to apply for cancellation, he bore the burden of establishing both hardship and good moral character. If Your Honors have no further questions. What about the argument that the board committed illegal heroin and said it couldn't consider the injuries to the spouse? That seems like a pretty clear error to me. Your Honor, the board did not fully engage with the hardship evidence. It relied on the good moral character. You concede that that's not a correct statement of the law. I agree that the board, that if the court disagrees with the good moral character finding, it should remand to the board to fully address the other issues. All right. Thank you. Anything further? Thank you. Very good. Thank you. The rebuttal, Mr. Anderson. In thinking about what was just discussed, I think we've got a couple main questions. First of all, what do we have to show to prove cancellation removal? You've got to prove tenuous physical presence, good moral character, family members, so spouse, child, parent that's a U.S. citizen or permanent resident, no departures of 90 days or more, and I think I may have just missed one. There's five main ideas there. In those five ideas, good moral character is the one we're talking about, but we didn't spend any time talking about reproving that he's been here for more than ten years. We didn't spend any time presenting more evidence to show that he's been in the United States for more than ten years, that he has no departures of greater than 90 days. We didn't spend any time proving that his three children are U.S. citizens. Why did we not do that? It's in the record. The answer is it's in the record. It's already there. This was a litigated question. The immigration judge at the trial court level agreed with those facts, and it then brings the question of if we're to file a motion to reopen. Why didn't you tell the board that when the government raised the issue? I guess that's a good question, Your Honor. It seemed that because it's in the record, the requirement or if there's a requirement of refiling a cancellation or removal application with all the evidence to prove the same elements that we've already discussed, or if the court should have the benefit of already having all those documents in the record in the same, essentially the same or similar proceedings. And so I would suggest that the motion reopen when we have all of that information in the I don't think we have to go back and resubmit bursa to bigots. You're essentially duplicating. I mean, it would be duplicating hundreds of pages of the record. Is that necessary? I would suggest that, no, it's not. Now, that's not to say if Respondent were to file a brand-new form of relief that we would have a different case. If we're going into court and saying the court should consider an asylum application, well, certainly we need to file an I-589 application for asylum. Certainly we need to file new supportive evidence to prove that. Here we're discussing the same facts, the same history, with a significant change, which is the harm to the spouse and child, and the question of how the board and or the immigration judge should reevaluate the case in light of those new facts. I mean, to simply put But, I mean, on the good, moral character issue was rejoined on the motion to reopen, right? I mean, the government filed a brief raising intervening legal authority. That's different than some of the other factors, right? I mean, unless I'm misunderstanding the record, you knew at that point that this was going to be a fighting issue, the good, moral character, or am I misstating the record? In other words, the birth certificate everyone knew was not going to be at issue, but good, moral character in light of the Attorney General's decision was clearly in play again, or am I wrong? I would answer that and say, how do we — how does the Court make that determination based on the evidence presented, and the Court would look at the record in its entirety? And in this scenario, I think you'd say — I think it's yes. I think the question of moral character is in play again, but does the Court have the benefit of the entire record, the previous trial judge finding that there was no good moral character, the previous trial counsel's agreement that there was no lack of good moral character, and now this intervening case that comes after the Board already had a chance to address it? Has that fact been proven? I think that's the big question is, is it already in the record, is it already proven? Is it proven like the three U.S. citizen children were proven? Is it proven like the 10 years physical presence was proven? And I would say that absolutely it was. It's in the record. It's clear. And what the purpose of the motion to reopen is to present new evidence that substantially changes the case. And I agree it's a heavy burden, but a big factor like a car accident, something that's involving significant medical treatment, later an MRI, disc herniations, I mean, this is — it's not a light — it's not an ankle sprain. We're talking about something significant, and for that reason, we'd ask the Court to remand. Thank you, Your Honor. Thank you. The matter is submitted, and the Court takes it under advisement. We'll get your opinion in a — shortly. I want to thank you very much for your briefing and arguments, and have a good day. Thanks.